IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCUS GATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   14-cv-0018-MJR-SCW |
| | ) |
| KEVIN BATHON, | ) |
| DEREK FLATT, | ) |
| CORY HARBISON, | ) |
| BRYCE HICKS and | ) |
| DAVID HOMOYA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

I.   INTRODUCTION

While incarcerated at Pontiac Correctional Center, Marcus Gates (Plaintiff) filed a pro se complaint in this Court under 42 U.S.C. 1983, asserting that a nurse and five correctional officers at Pinckneyville Correctional Center violated his federally-secured constitutional rights.  Specifically, Plaintiff alleges that five officers – Kevin Bathon, Derek Flatt, Cory Harbison, Bryce Hicks, and David Homoya – used excessive force against him on January 3, 2013 (Count 1) and failed to obtain medical care for the injuries he sustained as a result of that use of force (Count 2).  Plaintiff's complaint also contained a claim for deliberate indifference against Nurse Mary Lane (Count 3), but that claim was dismissed without prejudice based on Plaintiff's failure to exhaust his administrative remedies as to Lane (*see* Doc. 46).

Now before the Court is a summary judgment motion and supporting brief filed by Bathon, Flatt, Harbison, Hicks and Homoya (Defendants).  Plaintiff was given notice of the motion and had until January 7, 2016 to respond (Doc. 62).  As of January 28, 2016, Plaintiff had not responded.  The Court treats this failure to respond as an admission of the undisputed material facts set forth in Defendants' supporting memo but will address the merits of the motion.  *See* **SDIL Local Rule 7.1(c) (failure to timely respond may, in court's discretion, be considered admission of merits of motion);** *Smith v. Lamz*, **321 F.3d 680, 683 (7th Cir. 2003);** *Flynn v. Sandahl*, **58 F.3d 283, 288 (7th Cir. 1995) (failure to respond constitutes an admission that there are no disputed material facts).**  Based on the following, the Court partially grants and partially denies Defendants' motion.

II.   **SUMMARY OF KEY ALLEGATIONS AND FACTS**

On January 8, 2014, Plaintiff filed suit in this Court asserting claims of excessive force and deliberate indifference (Doc. 1).  As summarized in the undersigned Judge's February 5, 2014 threshold review order, Plaintiff alleged the following.  Defendants Flatt, Homoya, and Hicks used excessive force against Plaintiff while he was on the yard -- kicking and punching Plaintiff, causing him to have a split lip (Doc. 8, p. 1-2).  As Plaintiff was being escorted back to the building, he was assaulted by Harbison, causing Plaintiff's nose to bleed, breaking off one of his front teeth, and knocking out another (*Id.* at p. 2).  Plaintiff then was assaulted by Bathon in the shower, which caused Plaintiff's broken tooth to fall out completely (*Id.*).  According to Plaintiff's complaint, none of the

Defendants obtained medical treatment for his obvious wounds.

Defendants seek summary judgment on Plaintiff's excessive force and deliberate indifference claims. As noted above, the Court treats Plaintiff's failure to oppose the motion as an admission of the undisputed facts delineated by Defendants. The undisputed facts set forth in Defendants' motion and supporting memo are as follows. (The Court also refers to excerpts of Plaintiff's deposition, taken in this lawsuit and provided as an exhibit to Defendants' summary judgment brief, Doc. 61-3).

On January 3, 2014 Plaintiff was in line to be escorted from his housing unit to the prison yard. He refused to stay in the line and "pair up" (Doc. 61-1, p. 3). Flatt pulled Plaintiff out of the line and asked him why he was not staying in line. Plaintiff responded "Fuck your yard!" and struck Flatt in the right eye with a closed fist (Doc. 61-1, p. 3 & 5). Flatt took Plaintiff to the ground. Homoya and Hicks responded and assisted in restraining Plaintiff (Doc. 61-1, p. 5). Plaintiff testified that while on the ground, Defendants Flatt, Homoya, and Hicks started punching Plaintiff, mainly in the stomach, and were grabbing and pulling his testicles (Doc. 61-3, p. 3-5, 7). Flatt was near Plaintiff's head. Plaintiff testified that he believes someone hit him the face, as he ended up with bloodied lips and a loose tooth (*Id.* at p. 4).

Plaintiff was escorted to segregation by Bathon and Harbison (Doc. 61-3, p. 1). Along the way to segregation, Plaintiff's mouth filled with blood due to his injuries. He spit out the blood twice to his side (the side on which Harbison was located), once on the sidewalk, and once on the grass (Doc. 61-3, p. 5-6). Plaintiff also spit out blood near a

trashcan, after which Harbison grabbed Plaintiff's head and pushed it with "full force" into a glass window, causing his nose to start bleeding and one tooth to crack and another tooth to loosen (Doc. 61-3, p. 6-11, 9).  Plaintiff testified that when he spit the toward the trashcan, Harbison did not immediately slam Plaintiff's head but waited the few seconds until Plaintiff was near the glass window (*Id*. at p. 10-11).  Plaintiff's hands were handcuffed behind his back at the time (*Id*. at p. 6).

Plaintiff was then taken to the segregation showers by Bathon (Doc. 61-3, p. 12). Bathon ordered Plaintiff to lie on his stomach; Bathon put his knee in Plaintiff's back and his hand on Plaintiff's neck (*Id*. at p. 12).  Plaintiff thought he was being held down so Bathon could remove the handcuffs, as Plaintiff was ordered to change clothes.  But Plaintiff testified that he was held down for ten seconds and felt like he could not breathe (*Id.* at p. 16-17).  When Plaintiff turned to say something to Bathon, one of Plaintiff's teeth fell out (*Id*. at p. 12-14, 17).  Plaintiff was taken to another shower where he was allowed to change (*Id*. at p. 13, 15).  Plaintiff was moved to a segregation cell by another set of correctional officers (*Id*. at p. 17-18).

Plaintiff told Bathon and Harbison that he wanted to talk to Internal Affairs or "IA" (Doc. 61-3, p. 19).  The officers advised that the nurse was on the way (*Id*.). The nurse saw Plaintiff in the shower (*Id*. at p. 18).  His nose and mouth were still bleeding. The nurse offered Plaintiff medical care, but he insisted that he wanted to first speak to IA and get pictures of his injuries (*Id*. at p. 19).  The nurse indicated that Plaintiff needed treatment and asked to clean his injuries, but he refused until IA arrived (*Id*. at p. 22).

Plaintiff saw the nurse within 40 minutes of being in segregation (*Id.* at p. 21).

### III. APPLICABLE LEGAL STANDARDS

#### A. <u>Summary Judgment</u>

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a).** *See also Wragg v. Village of Thornton,* **604 F.3d 464, 467 (7th Cir. 2010).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* **477 U.S. 317, 323 (1986).** After a properly supported summary judgment motion is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 250 (1986),** *quoting* **FED. R. CIV. P. 56(e)(2).**

A fact is material if it is outcome determinative under applicable law. *Anderson,* **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't,* **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* **477 U.S. at 248.** To survive summary judgment, the nonmovant must present more than a "mere scintilla" of

evidence showing the existence of a genuine issue of material fact. *Chaib v. Indiana*, **744 F.3d 974, 981 (7th Cir.),** *cert. denied,* **135 S. Ct. 159 (2014).** *See also Zuppardi v. Wal-Mart Stores, Inc.,* **770 F.3d 644, 650 (7th Cir. 2014).** Stated another way, a scintilla of evidence supporting the nonmovant's position is not enough; "there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, **711 F.3d 794, 798 (7th Cir. 2013).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant (here, Plaintiff). *Srail v. Village of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences, and resolves doubts, in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Summary judgment is "not an appropriate occasion for weighing the evidence" and should not be granted if the evidence before the court supports alternate inferences. *Dowden v. Polymer Raymond, Inc.,* **966 F.2d 1206, 1207-08 (7th Cir. 1992).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004),** *cert. denied,* **546 U.S. 1032 (2005).**

B.  <u>Excessive Force</u>

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and is actionable under § 1983. *Hudson v. McMillian,* **503 U.S. 1, 6-7 (1992);** *De Walt v. Carter*, **224 F.3d 607, 619 (7th Cir. 2000).** Such force is described as the "unnecessary and wanton infliction of pain."

*Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010).

The test for whether force is excessive is whether the force was used in "a good-faith effort to maintain or restore discipline" or maliciously or sadistically to cause harm. *Id.; Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). The Court uses several factors to determine whether the force was legitimate or malicious including: "the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Santiago*, 599 F.3d at 757 (quoting *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004)). *See also Forrest*, 620 F.3d at 744-45; *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009), *cert. denied,* 559 U.S. 1008 (2010).

### C. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("**Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."**).

To prevail on a deliberate indifference claim, a prisoner must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). First, the prisoner must

demonstrate that he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious. It could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *See also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires deliberate indifference to a *substantial* risk of *serious* harm). Only if this objective prong is met need the court analyze the second or subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, 414 F.3d at 652–53.

Satisfying the subjective prong requires a prisoner to show that a prison official knows of —and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. The plaintiff need not show the physician literally *ignored* his complaint, just that the physician was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Courts give deference to physicians' treatment decisions, since "there is not one proper way to practice medicine, but rather a range of acceptable courses." *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008). A doctor who chooses one routine medical procedure over another does not violate the Eighth Amendment. *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010). *See also Estelle*, 429 U.S. at 107 (whether additional

diagnostic techniques/treatments were needed is "classic example of a matter for medical judgment."). However, persisting in a course of treatment *known* to be ineffective runs afoul of the Eighth Amendment. *Greeno*, 414 F.3d at 655 (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for 18 months despite no improvement). Deliberate indifference may also be shown when a medical provider refuses to refer a patient to a specialist for treatment of a painful medical condition that clearly requires a referral. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Snyder v. Hayes*, 546 F.3d 516, 526 (7th Cir. 2008).

IV. ANALYSIS

  A. <u>Plaintiff's Excessive Force Claim</u>

The Court first notes that Defendants Harbison and Bathon have *not* sought summary judgment on Plaintiff's excessive force claim. Plaintiff's complaint alleges that Harbison pushed Plaintiff's face into a glass window, which bloodied his nose and cracked and loosened teeth. The complaint alleges that Bathon placed a knee on Plaintiff's back and an arm on the back of Plaintiff's neck in the segregation showers, making it difficult for Plaintiff to breathe. **Plaintiff's excessive force claim against these two Defendants remains for trial.**

Defendants Flatt, Hicks, and Homoya maintain that they are entitled to summary judgment on Plaintiff's excessive force claim, because Plaintiff cannot argue that he did not punch Defendant Flatt in the eye and, given the punch thrown by Plaintiff, using

force to control Plaintiff was necessary.

Following the January 3, 2013 incident, Plaintiff was charged with assaulting an officer, for striking Defendant Flatt in the right eye with a closed fist (Doc. 61-1, p. 3-5). Plaintiff was found guilty of that charge and ultimately had 9 months of good conduct credit revoked (Doc. 61-1, p. 3; 61-2, p. 1). Defendants are correct that given Plaintiff's disciplinary report, which has never been overturned, Plaintiff -- in this lawsuit -- cannot challenge the finding that he hit officer Flatt in the right eye with a closed fist after disobeying Flatt's orders. *See Moore v. Mahone*, **652 F.3d 722, 723 (7th Cir. 2011)** (" **Heck forbids a prisoner in his civil rights case to challenge a finding in his criminal or prison-discipline case that was essential to the decision in that case…**") **(citing** *Okoro v. Callaghan*, **324 F.3d 488, 490 (7th Cir. 2003), and** *Heck v. Humphrey*, **512 U.S. 477, 487 (1994)).**

But there is a genuine fact issue here as to the *amount* of force used against Plaintiff – i.e., "whether the guards used more force than was reasonably necessary to protect themselves from an unruly prisoner." *Gilbert v. Cook*, **512 F.3d 899, 902 (7th Cir. 2008).** Plaintiff testified at his deposition that after he was lying on the ground, the three Defendants continued to punch Plaintiff and grab and pull at his testicles. Plaintiff testified that Defendants bloodied his lips and loosened his teeth, causing his mouth to fill with blood. Though it is not clear from the portion of the deposition provided to the Court (Defendants did not furnish the complete deposition transcript), Plaintiff's testimony suggests that while he lay on the ground with his eyes closed, not

resisting, no longer hostile, Defendants punched him and battered his testicles.

A jury could find that Plaintiff was no longer combative (and no longer posed any threat) when Defendants continued to punch Plaintiff. **Mitchell v. Krueger, 594 Fed. Appx. 874, 877 (7th Cir. 2014) (summary judgment improper where there was evidence from which a jury could find that the inmate was no longer a threat and the force used against him was excessive).** Construing the facts and reasonable inferences in the light most favorable to Plaintiff, the record contains evidence on which a jury reasonably could conclude that Defendants' actions were excessive in light of the circumstances. As such, summary judgment on this claim is inappropriate. **Plaintiff's excessive force claim against Flatt, Hicks and Homoya remains for trial.**

### B. Plaintiff's Deliberate Indifference Claim

All five Defendants contend that they are entitled to summary judgment on Plaintiff's deliberate indifference claim, emphasizing that they did not interfere with or delay Plaintiff's medical treatment in any way. Plaintiff alleges that Defendants were deliberately indifferent in not providing him medical care directly after he was assaulted by them. Construing the facts and reasonable inferences in the light most favorable to Plaintiff, the Court finds no evidence of deliberate indifference.

First, there is no evidence that Defendants *delayed* Plaintiff's medical care in any way. *See Grieveson v. Anderson*, **538 F.3d 763, 779-80 (7th Cir. 2008)(failure to obtain medical attention for inmate with broken nose for one and a half days could constitute a delay in treatment and deliberate indifference);** *Berry*, **604 F.3d at 441**

**(significant delay in effective medical treatment may constitute deliberate indifference where the result is prolonged and unnecessary pain).**

While Defendants Bathon and Harbison escorted Plaintiff to segregation, Plaintiff asked to speak to IA, not medical personnel. Defendants told him that he would be seen by a nurse, and that the nurse was already on the way. Plaintiff admits that within forty minutes of his arrival in segregation, he was seen by a nurse. Nurse Lane indicated that Plaintiff needed treatment, and she asked to start by cleaning his injuries. Plaintiff refused to have Nurse Lane treat him. Plaintiff testified that he declined treatment until he could be seen by IA and pictures of his injuries could be taken. There is no evidence that any of the Defendants *prevented* or *interfered with* Plaintiff obtaining treatment for his injuries. Rather it was Plaintiff who, admittedly, refused to be treated when the nurse arrived to provide him medical treatment.

Construing the facts and reasonable inferences in Plaintiff's favor, the record before this Court contains no evidence that Defendants were deliberately indifferent in providing Plaintiff access to medical treatment. No genuine issues of material fact exist on this claim, and Defendants are entitled to judgment as a matter of law.

## V. CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (Doc. 60).

Summary judgment is *granted* on Plaintiff's deliberate indifference claim. At the close of the case, judgment will be entered in favor of Defendants Bathon, Flatt, Harbison, Hicks, and Homoya (and against Plaintiff) on the claim of deliberate indifference to serious medical needs.

Summary judgment is *denied* as to Defendants Flatt, Hicks, and Homoya on Plaintiff's excessive force claim. Genuine issues of material fact preclude the entry of summary judgment for the three moving Defendants on that claim. Thus, that claim remains for trial along with Plaintiff's excessive force claim against non-moving Defendants Bathon and Harbison.

The final pretrial conference will be conducted by Judge Williams, as scheduled, on February 3, 2016. Trial remains set before the undersigned on March 21, 2016 (although this case is "behind" eight other cases set for trial that day).

IT IS SO ORDERED.

DATED January 29, 2016.

**s/ Michael J. Reagan**
Michael J. Reagan
United States District Judge